| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Brandon J Iskander<br>Goe Forsythe & Hodges LLP<br>17701 Cowan<br>Building D<br>Suite 210<br>Irvine, CA 92614<br><br>949–798–2460<br><br><br><br><br>*Plaintiff or Attorney for Plaintiff* | |

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA – RIVERSIDE

| In re:<br><br>Artiana Aileen Carrara Rubino and Chris Rubino<br><br><br><div align="right">Debtor(s).</div> | CASE NO.: 6:22–bk–12775–RB<br><br>CHAPTER: 7<br><br>ADVERSARY NUMBER: 6:23–ap–01036–RB |
|---|---|
| Charles W. Daff (TR)<br><br><br><div align="right">Plaintiff(s)</div><div align="center">Versus</div>Cortney A Rubino<br><br><br><div align="right">Defendant(s)</div> | ## SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004–1] |

TO THE DEFENDANT(S): A Complaint has been filed by the Plaintiff against you. If you wish to defend against the Complaint, you must file with the court a written pleading in response to the Complaint. You must also serve a copy of your written response on the party shown in the upper left–hand corner of this page. The deadline to file and serve a written response is **05/22/2023.** If you do not timely file and serve the response, the court may enter a judgment by default against you for the relief demanded in the Complaint.

A status conference in the adversary proceeding commenced by the Complaint has been set for:

| | |
|---|---|
| **Date:** | **July 11, 2023** |
| **Time:** | **02:00 PM** |
| **Hearing Judge:** | **Magdalena Reyes Bordeaux** |
| **Location:** | **3420 Twelfth St., Crtrm 303, Riverside, CA 92501** |

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**You must comply with LBR 7016–1, which requires you to file a joint status report and to appear at a status conference.** All parties must read and comply with the rule, even if you are representing yourself. You must cooperate with the other parties in the case and file a joint status report with the court and serve it on the appropriate parties at least 14 days before a status conference. A court–approved joint status report form is available on the court's website (LBR form F 7016–1.STATUS.REPORT) with an attachment for additional parties if necessary (LBR form F 7016–1.STATUS.REPORT.ATTACH). If the other parties do not cooperate in filing a joint status report, you still must file with the court a unilateral status report and the accompanying required declaration instead of a joint status report 7 days before the status conference. **The court may fine you or impose other sanctions if you do not file a status report. The court may also fine you or impose other sanctions if you fail to appear at a status conference.**

**KATHLEEN J. CAMPBELL
CLERK OF COURT**

Date of Issuance of Summons and Notice of Status Conference in Adversary Proceeding: <u>April 21, 2023</u>

By: <u>"s/" Rita Cargill</u>

Deputy Clerk



This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:


A true and correct copy of the foregoing document entitled: **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004–1]** and (2) the accompanying pleading(s) entitled:

_____

_____

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005–2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:


☐  Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.


☐  Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.


☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_____   _____   _____
*Date*                                    *Printed Name*                                             *Signature*

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2016*                                                                        **F 7004–1.SUMMONS.ADV.PROC**

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
### OFFICE OF THE CLERK

**KATHLEEN J. CAMPBELL**
Executive Officer
Clerk of Court

## ADDITIONAL INSTRUCTIONS FOR PLAINTIFFS/PLAINTIFFS' ATTORNEY

You are required to serve and complete both of the attached "NOTICE TO DEFENDANTS," (English and the Spanish version), to all defendants along with your summons.  Your Proof of Service should indicate that the notices were served, as well as the other documents.

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

In re:

ARTIANA AILEEN CARRARA-RUBINO and
CHRIS CARRARA RUBINO,

Debtor(s).

Case No.: 6: 22-bk-12775-RB
Adv No:    6: 23-ap-01036-RB

CHARLES W. DAFF, solely in his capacity as chapter 7 trustee for
the bankruptcy estate of ARTIANA AILEEN CARRARA-RUBINO
and CHRIS CARRARA RUBINO

Plaintiff(s),

v.

CORTNEY A. RUBINO, an individual,

Defendant(s).

## NOTICE TO DEFENDANTS

You have been served with a summons and Complaint.  If the plaintiff is successful, you could end up owing money to the plaintiff.

You have the right to proceed in this adversary proceeding without an attorney. However, the rules can be quite technical and you should consult an attorney.  If you are unable to afford an attorney, please call for an appointment:

Public Services

Law Corporation

4129 Main Street, Suite 101

Riverside, CA 92501

(951)682-7968

You will be screened for financial eligibility and if it is determined that you are eligible, an attorney may be found who will represent you without payment of attorney's fees.

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

In re:

ARTIANA AILEEN CARRARA-RUBINO and
CHRIS CARRARA RUBINO,

                                    Deudor(s).

Case No.: 6: 22-bk-12775-RB
Adv No:   6: 23-ap-01036-RB

CHARLES W. DAFF, solely in his capacity as chapter 7 trustee for
the bankruptcy estate of ARTIANA AILEEN CARRARA-
RUBINO and CHRIS CARRARA RUBINO    Demandante(s),

v.

CORTNEY A. RUBINO, an individual,

                                    Demandado(s).

## AVISO AL DEMANDADO(S)

A usted se le ha entregado una citacion judicial y una demanda.  Si el demandante gana en su demanda, usted puede deberle dinero al demandate.

Usted tiene el derecho de proceder sin un Abogado, pero los requisitos legales son tecnicos y usted debe consultar un Abogado.  Si usted no tiene recursos para emplear un Abogado, por favor llame para una cita gratis a:

Public Services

Law Corporation

4129 Main Street, Suite 101

Riverside, CA 92501

(951)682-7968

Usted sera determinado para elegibilidad financiera y si es determinado que usted es elegible, un Abogado quizas le representara de gratis.

-2-

# UNITED STATES BANKRUPTCY COURT

## Early Meeting of Counsel and Status Conference Instructions

## Effective
## March 28, 2022

**1.**    __Service of Order.__    A copy of this Order must be served with the summons and complaint

under Rule 26(f) Meeting, Initial Disclosures, and Scheduling Conference.  The proof of service

must indicate service of the summons, complaint, and copy of this Order.

**2.**    __Local Bankruptcy Rule 7026-1__.  Compliance with Local Bankruptcy Rule 7026-1

("LBR 7026-1") is required in ALL adversary proceedings.

**3.**    __Rule 26(f) Meeting__.  Parties must meet and confer under Rule 26(f) of the Federal Rules

of Civil Procedure ("Rule 26(f) Meeting") at least 21 days before the status conference date

indicated in the summons unless all defendants default.

The parties are jointly responsible for scheduling and attending the Rule 26(f) Meeting.

During the Rule 26(f) Meeting, the parties must:

(a) discuss the nature and basis of their claims and defenses, as well as the possibilities

for a prompt settlement or resolution of the case;

(b) make or arrange for the initial disclosures required by Rule 26(a)(1); and

(c) develop a proposed discovery plan.

***The parties are directed to approach a Rule 26(f) Meeting cooperatively and in good faith.***

***The discussion of claims and defenses must be substantive and meaningful.***

4.    <u>**Rule 26(a)(1) Initial Disclosures**</u>.  Under Rule 26(a)(1), a party must, without waiting

for a pending discovery request, provide to other parties:

a.    The name and, if known, the address, and telephone number of each individual

likely to have discoverable information along with the subjects of that

discoverable information that the disclosing party may use to support its claims or

defenses, unless the use of this discoverable information would be solely for

impeachment;

b.    A copy of all documents, electronically stored information, and tangible things

the disclosing party has in its possession, custody, or control and may use to

support its claims or defenses, unless the use of these documents, electronically

stored information, and tangible things would be solely for impeachment. (*If*

*copies of the above are unavailable, you must provide a description by category*

*and location of such documents, electronically stored information, and tangible*

*things*);

c.    A calculation of all damages claimed by the disclosing party. Under Rule 34, the

disclosing party must also make available for inspection and copying all

documents and evidentiary materials on which each calculation is based, which

includes but is not limited to materials relating to the nature and extent of injuries

suffered, unless such documents and evidentiary materials are privileged or

protected from disclosure;

d.    Under Rule 34, the disclosing party must make available for inspection and

copying any insurance agreements where an insurance business is or may be

liable to satisfy all or part of a possible judgment in the action or to indemnify or

reimburse for payments made to satisfy the judgment.

F.R.Civ.P. 26(a)(1)(A).  Rule 26(a)(1) requires a party to make its initial disclosures based on the

information then reasonably available to it.  A party is not excused from making its disclosures

because it has not fully completed its investigation of the case or because it challenges the

sufficiency of another party's disclosures or because another party has not made its disclosures.

F.R.Civ.P. 26(a)(1)(E).

**5**.    **Rule 16(b) Scheduling Conference**. The initial status conference scheduled by the Court

in the summons shall also serve as the initial Rule 16(b) Scheduling Conference in this adversary

proceeding.

**6**.    **Alternative Dispute Resolution ("ADR").**  The parties must explore the feasibility of

ADR to reach a settlement or early resolution of the adversary proceeding.  The reasons for not

participating in a form of early ADR must be explained in the Joint Status Report.  If parties

elect not to participate in early ADR effort(s), the Court could direct parties to ADR before trial.

**7**.    **Discovery Plan.**  At the Rule 26(f) Meeting, parties must also discuss any issues about

preserving discoverable information and develop a proposed discovery plan.  The discovery plan

discussion following the initial disclosures must address the relevance of the discovery sought

and the sequence and timing of such discovery, including how such discovery will be conducted.

The discovery plan deadlines must be mutually agreed upon, with a goal to achieve resolution of

the case with minimum expense and delay.

**8**.    **Joint Status Report**. Not later than 14 days before the status conference/Rule 16(b)

Scheduling Conference date set forth in the summons, the parties must file a Joint Status Report

using mandatory **LBR Form F 7016-1.1.**  The Joint Status Report must contain the information

set forth in LBR 7016-1(a)(2), and a statement that the parties completed the Rule 26(f) Meeting

and that the parties made the initial disclosures required by Rule 26(a)(1).  The Joint Status

Report shall also serve as the written report of the Rule 26(f) Meeting.

Please note that under Local Bankruptcy Rule 7016-1(a)(3), if any party fails to cooperate

in the preparation of a joint status report, each party is required to file a unilateral status report

not less than 7 days before the date scheduled for the status conference. The status report should

include a declaration indicating the attempts made by each party to contact or obtain the

cooperation of the non-complying party in the preparation of a joint status report.

Parties are excused from filing a status report if one of the following is true:

(1)    prior to the date scheduled for the status conference, the parties filed, and the

Court entered an order approving a stipulation that resolves all issues raised by

the adversary proceeding and provides either for dismissal of the action in its

entirety or the entry of judgment in the action;

(2)    defaults were entered as against all defendants and the plaintiff filed and served a

motion for default judgment prior to the date scheduled for the status conference;

(3)    the parties filed and, prior to the date scheduled for the status conference, the

Court entered an order approving, a stipulation continuing the status conference to

a later date (in which case a written status report must be filed not less than 7 days

in advance of the continued status conference date); or

(4)    The Court expressly relieved the parties of the obligation to file a written status

report.

**9**.    **Status Conference / Rule 16(b) Scheduling Conference**.  At the Rule 16(b) Scheduling

Conference, the Court will review the discovery plan set forth in the Joint Status Report and set

appropriate deadlines.  The Court seeks to try all adversary proceedings not later than 18 months

after filing of the complaint.  Consequently, all deadlines in the schedule, including the

dispositive motion deadline, must be met within 12 to 14 months after filing of the complaint to

afford adequate time for briefing and ruling prior to the final pretrial conference and trial date.

Counsel representing any party in conjunction with the Rule 26(f) Meeting, Joint Status

Report, and Rule 16(b) Scheduling Conference must be authorized to bind the party on all

matters to be covered.

**10.**    **Default.**  If no timely response to the complaint is filed with the Court, the plaintiff may

request entry of default by the clerk <u>prior</u> to the status conference date shown in the summons.

F.R.Civ.P. 55(a).  The plaintiff may also request entry of a default judgment by filing and

serving an appropriate motion.  F.R.Civ.P. 55(b)(2).

**11.**    **Sanctions.**  Failure to comply with these instructions may subject the responsible party

and/or counsel to sanctions.  The failure of either party to cooperate in the preparation and filing

of a Joint Status Report or appear at the status conference may result in the imposition of

sanctions under LBR 7016-1(f) or (g).


Magdalena Reyes Bordeaux

United States Bankruptcy Judge

1 | Robert P. Goe – State Bar No. 137019
Brandon J. Iskander – State Bar No. 300916
2 | **GOE FORSYTHE & HODGES LLP**
17701 Cowan Avenue, Suite 210
3 | Irvine, CA 92614
rgoe@goeforlaw.com
4 | biskander@goeforlaw.com
Telephone:  (949) 798-2460
5 | Facsimile:   (949) 955-9437

6 | Attorneys for Plaintiff Charles W. Daff,
Chapter 7 Trustee
7 |

8 | **UNITED STATES BANKRUPTCY COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA - RIVERSIDE DIVISION**

10 |

| | |
|---|---|
| In re: | Case No.  6:22-bk-12775-RB |
| | Chapter 7 Proceeding |
| ARTIANA AILEEN CARRARA-RUBINO and CHRIS CARRARA RUBINO, | Adv. No.: 6:23-ap-_____ |
| Debtors. | **COMPLAINT FOR:** |
| | 1. **AVOIDANCE AND RECOVERY OF INTENTIONAL FRAUDULENT TRANSFERS AND RECOVERY OF SAME [11 U.S.C. §§ 544, 548, 550, 551; CAL. CIV. CODE §§ 3439.04, 3439.07];** |
| CHARLES W. DAFF, solely in his capacity as chapter 7 trustee for the bankruptcy estate of ARTIANA AILEEN CARRARA-RUBINO and CHRIS CARRARA RUBINO, | 2. **AVOIDANCE AND RECOVERY OF CONSTRUCTIVE FRAUDULENT TRANSFERS AND RECOVERY OF SAME [11 U.S.C. §§ 544, 548, 550, 551; CAL. CIV. CODE §§ 3439.04, 3439.05, 3439.07];** |
| Plaintiff, | |
| v. | 3. **DECLARATORY RELIEF [11 U.S.C. §§ 544, 548; FED. R. BANKR. P. 7001(9)];** |
| CORTNEY A. RUBINO, an individual, | |
| Defendant. | 4. **UNJUST ENRICHMENT [11 U.S.C. § 105];** |
| | 5. **DISALLOWANCE OF CLAIMS [11 U.S.C § 502(d)]; AND** |
| | 6. **TURNOVER OF PROPERTY OF THE ESTATE [11 U.S.C. § 542].** |

1

Charles W. Daff ("Trustee"), solely in his capacity as the duly-appointed, qualified, and acting Chapter 7 trustee ("Trustee" or "Plaintiff") for the bankruptcy estate ("Estate") of Artiana Aileen Carrara Rubino and Chris Carrara Rubino ("Debtors"), hereby brings this Complaint against Cortney A. Rubino ("Defendant") and respectfully complains and alleges as follows:

## I.    SUBJECT MATTER JURISDICTION AND VENUE

1.    This adversary proceeding is filed pursuant to Federal Rule of Bankruptcy Procedure, Rules 7001(1) (a proceeding to recover money or property) and (9) (a proceeding to obtain a declaratory judgment relating to any of the foregoing).

2.    Plaintiff, as Trustee for the Debtors' bankruptcy estate ("Estate") has standing to bring this action under 11 U.S.C. §§ 323, 544, 547, 548, and 550.

3.    This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 in that this action arises in and relates to the Debtor's bankruptcy pending in the United States Bankruptcy Court for the Central District of California, Riverside Division entitled *In re Artiana Aileen Carrara-Rubino and Chris Carrara Rubino*, Case No. 6:22-bk-12775-RB on the Court's docket.

4.    This action is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) (matters concerning the administration of the Estate), and (b)(2)(H) (proceeding to determine, avoid or recover fraudulent conveyances).

5.    Venue is proper in this District pursuant to 28 U.S.C. § 1409(a), as this adversary proceeding arises under Title 11, or relates to a case under Title 11, which is pending in this District and does not involve a consumer debt less than $22,700.00.

6.    Venue in this judicial district is appropriate under 28 U.S.C. §§ 1409(a) and/or (c) because Debtor's bankruptcy case is pending in the Central District of California.

7.    To the extent that the Plaintiff asserts claims under 11 U.S.C. § 544, the Plaintiff is informed and believes and based thereon alleges that there exists in this case one or more creditors holding unsecured claims allowable under 11 U.S.C. § 502 or are not allowable under 11 U.S.C. § 502(e), who can avoid the respective transfers as set forth hereinafter under California,

Pennsylvania, or other applicable law.

## II.   THE PARTIES

8.   Plaintiff is the duly-appointed, qualified, and acting Chapter 7 Trustee for the Debtor's Estate and brings the claims asserted herein solely in that capacity.

9.   Plaintiff is informed and believes and based thereon alleges that Cortney A. Rubino ("Defendant"), is an individual residing in Perry County, Pennsylvania and is the former spouse of Debtor Chris Carrara Rubino.  Defendant is the initial transferee of all transfers (defined below).

## III.   GENERAL ALLEGATIONS

10.   The allegations contained in paragraphs 1-9, inclusive, are re-alleged and incorporated herein by this reference, as though set forth in full.

11.   At all relevant times alleged herein, the Defendant is an individual residing in Perry County, Pennsylvania.

12.   On October 26, 2010, Defendant, then known as Cortney Seiber, along with Gary N. Seiber, Jr. conveyed the real property located at 14 Grandview Circle, Liverpool, Pennsylvania 17045 ("Property") by Deed recorded in the Official Records of the Perry County Recorder of Deeds as Instrument No. 201008371 from "Gary N. Seiber, Jr. and Cortney A. Seiber, his wife, now known through marriage as Cortney A. Rubino, Grantors" to "Cortney A. Rubino," Grantee. A true and correct copy of the October 2010 Deed is attached hereto and incorporated herein as **Exhibit "1."**

13.   On June 16, 2014, Defendant conveyed the Property by Deed entitled "This Deed" recorded in the Official Records of the Perry County Recorder of Deeds as Instrument No. 201403613 from "Cortney A. Rubino," Grantor to "Chris C. Rubino and Cortney A. Rubino, husband and wife," Grantees.  A true and correct copy of the June 2014 Deed is attached hereto and incorporated herein as **Exhibit "2."**

14.   Pursuant to the June 2014 Deed, Defendant "will SPECIALLY WARRANT AND FOREVER DEFEND" the conveyance.

\\\

15.     Concurrent with the June 2014 Deed, a Mortgage was recorded in the Official Records of the Perry County Recorder of Deeds as Instrument No. 201403614 in favor of the Liverpool Community Bank for $241,500 with the borrowers Defendant, Debtor, Cynthia L. Strawser, and Rodney K. Strawser listed thereon.  A true and correct copy of the June 2014 Mortgage is attached hereto and incorporated herein as **Exhibit "3."**

16.     Subsequent to the recordation of the June 2014 Mortgage, a Satisfaction of Mortgage for borrowers "Gary N Seiber Jr and Cortney A Seiber" was recorded on March 22, 2016 in the Official Records of the Perry County Recorder of Deeds as Instrument No. 201601857, leaving the only liability on the Property in Debtor and Defendant's name.  A true and correct copy of the March 2016 Satisfaction of Mortgage is attached hereto and incorporated herein as **Exhibit "4."**

17.     On November 24, 2021, Debtor and Defendant transferred the Property to Defendant via Deed recorded in the Official Records of the Perry County Recorder of Deeds as Instrument No. 202110114 ("November 2021 Deed" or "First Transfer").  The First Transfer deed indicates that the Grantor (Debtor) received consideration of one dollar ($1.00).  A true and correct copy of the of the November 2021 Deed that constitutes the First Transfer herein is attached hereto and incorporated herein as **Exhibit "5."**

18.     At the time of the First Transfer, Debtor had been an owner of the Property for nearly seven (7) years.

19.     The Trustee is informed and believes and based thereon alleges that at the time of the First Transfer, the Property was worth at least $500,000 subject to a mortgage with a loan balance of approximately $200,000, making the individual interest of the Debtor in the Property worth at least $150,000 ($500,000 - $200,000 = $300,000 ÷ 2 = $150,000).

20.     On January 3, 2022, Defendant refinanced a prior loan against the Property, obligating Defendant only on a Mortgage recorded in the Official Records of the Perry County Recorder of Deeds as Instrument No. 202200025 against the Property in favor of Rocket Mortgage, LLC ("January 2022 Mortgage") to pay a new loan with a principal balance of $221,000.00.  The

Trustee is informed and believes that the existing mortgage balance before the loan evidenced by the January 2022 Mortgage was approximately $200,000 and that Defendant withdrew approximately $20,000 of equity or more from the Property for her own use ("January 2022 Mortgage" "Second Transfer").  A true and correct copy of the January 2022 Mortgage is attached hereto and incorporated herein as **Exhibit "6."**

21.    A corresponding Mortgage Satisfaction Piece was recorded on January 19, 2022 in the Official Records of the Perry County Recorder of Deeds as Instrument No. 202200528, reconveying the June 2014 Mortgage.  A true and correct copy of the January 2022 Mortgage Satisfaction Piece is attached hereto and incorporated herein as **Exhibit "7."**

22.    On July 22, 2022 ("Petition Date"), the Debtors filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code.

23.    Plaintiff is continuing his investigation to determine whether additional avoidable transfers were made to the Defendant during the four years prior to the Petition Date and reserves the right to amend this Complaint to recover any such additional avoidable transfers.  Plaintiff is informed and believes and based thereon alleges that any funds paid to the Defendant during the four years prior to the Petition Date were fraudulent and are recoverable by Plaintiff under the Bankruptcy Code.

**FIRST CLAIM FOR RELIEF**

**[Avoidance and Recovery of Intentional Fraudulent Transfer with an Automatic Preservation for the Estate]**

**[11 U.S.C. §§ 544, 548, 550, 551; Cal. Civ. Code §§ 3439.04, 3439.07]**

24.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 23 as though set forth in full.

25.    The First Transfer and Second Transfer are of the Debtor's property.

26.    The First Transfer and Second Transfer were made on or within four (4) years of the Petition Date, but in no even longer than seven (7) years prior to the Petition Date.

27.    The First Transfer and Second Transfer were for nominal consideration or for less than reasonably equivalent value.

28.     The First Transfer and Second Transfer were to or for the benefit of an insider of the Debtor.

29.     The First Transfer and Second Transfer were of substantially all of the Debtors' assets.

30.     The First Transfer and Second Transfer were made at a time when Debtors were insolvent and/or rendered insolvent by virtue of said Transfers.

31.     The First Transfer and Second Transfer occurred shortly before or shortly after Debtors incurred a substantial debt.

32.     Based on the foregoing, Plaintiff may avoid the First Transfer and Second Transfer and said Transfers or recover the equivalent value of the Transfers with an automatic preservation for the Estate from the Defendant, for whose benefit the aforementioned First Transfer and Second Transfer were made pursuant to 11 U.S.C. §§ 544, 548, 550, and 551, and California Civil Code §§ 3439.04 and 3439.07.

## SECOND CLAIM FOR RELIEF

**[Avoidance and Recovery of Constructive Fraudulent Transfer with an Automatic Preservation for the Estate]**

**[11 U.S.C. §544, 548, 550, 551; Cal. Civ. Code §§ 3439.04, 3439.05, 3439.07, and 3439.09]**

33.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 32 as though set forth in full.

34.     Plaintiff is informed and believes, and based thereon alleges, that there are present creditors of the Debtor that were in existence at the time of the First Transfer and Second Transfer that still remain unpaid as of the Petition Date.  Plaintiff is informed and believes, and based thereon alleges, that future creditors of the Debtor existed following the First Transfer and Second Transfer who remain unpaid as of the Petition Date.

35.     The First Transfer and Second Transfer were made on or within four (4) years of the Petition Date, but in no even longer than seven (7) years prior to the Petition Date.

36.     Plaintiff is informed and believes, and based thereon alleges, that the First Transfer and Second Transfer were made:

a. For less than reasonably equivalent value, or any value, in exchange for said First Transfer and Second Transfer; and

b. At a time when Debtor was insolvent and/or was rendered insolvent by virtue of said First Transfer and Second Transfer; and/or

c. While Debtor was engaged or about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction; and/or

d. While the Debtor intended to incur, or believed, or reasonably should have believed the Debtor would incur debts beyond the Debtor's ability to pay them as they became due; and/or

e. The Debtor made the First Transfer and Second Transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

37. Based on the foregoing, Plaintiff may avoid the First Transfer and Second Transfer and recover said Transfers from the Defendant, for whose benefit the aforementioned transfers were made pursuant to 11 U.S.C. §§ 544, 548, 550, and 551, and California Civil Code §§ 3439.04, 3439.05, 3439.07, and 3439.09.

## **THIRD CLAIM FOR RELIEF**

### **[Declaratory Relief]**

### **[11 U.S.C. §§ 544, 548; Fed. R. Bankr. P. 7001(9)]**

38. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 32 as though set forth in full.

39. Plaintiff and Defendant herein have a dispute in which a declaration of their respective rights is necessary. Plaintiff is further informed and believes, and thereon alleges, that the said dispute is actual and continuing, and concerns an assertion by Defendant that she may have an equitable interest in 100% of the Property and may assert claims herein, retain the benefits of illegal or wrongful acts of other defendants herein, and/or adopt and ratify the said illegal and

1    wrongful acts, to the damage and prejudice of Plaintiff.

2         40.    Plaintiff is further informed and believes, and thereon alleges, that the said dispute

3    is actual and continuing, and concerns the continuing assertion by Defendant that she owns all

4    interests in the Property as her sole property, to the damage and prejudice of Plaintiff.

5         41.    Plaintiff is informed and believes and thereon alleges that prior to the First Transfer

6    and Second Transfer, title to the Property was vested in the Debtor and Defendant as tenants by the

7    entirety.

8         42.    Plaintiff is informed and believes that all appreciation in the Property inures to the

9    benefit of the Estate.

10        43.    Based on all of the above, Plaintiff respectfully requests from this Court a

11   declaration that the Property is property of the Estate pursuant to Section 541 of the Bankruptcy

12   Code and that the Property must be turned over to be used and sold by the Trustee pursuant to

13   Sections 363 and 542 of the Bankruptcy Code.

14        44.    The Plaintiff is entitled to declaratory relief related to this cause of action for the

15   recovery of money or property, other than a proceeding to compel the Debtor to deliver property to

16   the Trustee, or a proceeding under 11 U.S.C. §§ 554(b), 725, Rule 2017, or Rule 6002.

17                                **FOURTH CLAIM FOR RELIEF**

18                                    **[Unjust Enrichment]**

19                                    **[11 U.S.C. § 105]**

20        45.    Plaintiff realleges and incorporates herein by reference each and every allegation

21   contained in paragraphs 1 through 32 as though set forth in full.

22        46.    The Defendant received a benefit through the First Transfer and Second Transfer,

23   and Defendant's retention of the aforementioned Transfers and/or the value of said Transfers results

24   in an unjust retention of said benefit at the Estate's expense.

25        \\\

26

27        \\\

28

## FIFTH CLAIM FOR RELIEF

### [Disallowance of Claims]

### [11 U.S.C. § 502(d)]

47.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 46 as though set forth in full.

48.     Defendant is an entity from which property is recoverable under 11 U.S.C. § 550 and Defendant received an avoidable transfer under 11 U.S.C. §§ 544 and/or 548.

49.     Defendant has not paid the amount or turned over any such property for which Defendant is liable under 11 U.S.C. §522(i), 542, 543, 550, 553 of the Bankruptcy Code.

50.     Pursuant to 11 U.S.C. §502(d), to the extent Defendant files a claim against the Debtor's Estate, such claim should be disallowed.

## SIXTH CLAIM FOR RELIEF

### [Turnover of Property of the Estate]

### [11 U.S.C. § 542]

51.     Plaintiff hereby incorporates by reference paragraphs 1 through 32 and realleges these paragraphs as though set forth in full.

52.     Plaintiff is entitled to use, sell, or lease the Estate's legal and equitable interests in the Property under 11 U.S.C. § 363.

53.     Defendant shall deliver to the Plaintiff, and account for, within fourteen (14) days of the entry of Judgment in Plaintiff's favor all legal and equitable interests in the Property, including occupancy and possession, or the value of the Property, unless the Property is of inconsequential value or benefit to the Estate.

## PRAYER FOR RELIEF

WHEREFORE, the Trustee prays for Judgment as follows:

### ON THE FIRST CLAIM FOR RELIEF

1.     Avoiding the First Transfer and Second Transfer and declaring that said Transfers be annulled and rendered void as a actual fraudulent transfers, and entering an order recovering and

preserving said Transfers for the benefit of the Estate, or the value of said Transfers for the benefit of the Estate, together with interest thereon at the legal rate from the date of the First Transfer;

### ON THE SECOND CLAIM FOR RELIEF

2.     Avoiding the First Transfer and Second Transfer and declaring that said Transfers be annulled and rendered void as constructive fraudulent transfers, and entering an order recovering and preserving said Transfers for the benefit of the Estate, or the value of said Transfers for the benefit of the Estate, together with interest thereon at the legal rate from the date of the First Transfer;

### ON THE THIRD CLAIM FOR RELIEF

3.     Stating a declaration that the Property is property of the Estate pursuant to Section 541 of the Bankruptcy Code; and

4.     Finding that all appreciation in the Property inures to the benefit of the Estate;

### ON THE FOURTH CLAIM FOR RELIEF

5.     Declaring that the Defendant was unjustly enriched by the First Transfer and Second Transfer described herein, and entering an order recovering and preserving said Transfers for the benefit of the Estate, or the value of the aforementioned Transfers for the benefit of the Estate, together with interest thereon at the legal rate from the date of the Transfers;

### ON THE FIFTH CLAIM FOR RELIEF

6.     Disallowing any claims of the Defendant if she fails or refuses to turn over the Property, and/or the value of the Transfers, pursuant to 11 U.S.C. § 502(d);

### ON THE SIXTH CLAIM FOR RELIEF

7.     Granting turnover of all legal and equitable interests in the Property, including occupancy and possession, by no later than fourteen (14) days after entry of Judgment in favor of the Plaintiff.

\\\

\\\

**ON ALL CLAIMS FOR RELIEF**

8.     For interest at the applicable legal rate;

9.     For attorney's fees and costs of suit herein incurred; and

10.     For such other and further relief as the Court deems just and proper under the circumstances of this case.

Dated: April 21, 2023                           Respectfully submitted by,

**GOE FORSYTHE & HODGES LLP**

By: /s/ Brandon J. Iskander
    Robert P. Goe
    Brandon J. Iskander
    Attorneys for Plaintiff Charles W. Daff,
    Chapter 7 Trustee

# EXHIBIT 1

# EXHIBIT 1

**WENDY M. WELFLEY**
**PERRY COUNTY RECORDER OF DEEDS**
2 East Main Street
New Bloomfield, Pennsylvania 17068
(717) 582-2131



**Recorded On 10/26/2010 At 11:30:05 AM**
* **Instrument Type - DEED**
  **Invoice Number - 93483**
* **Grantor - SEIBER, GARY N JR**
* **Grantee - RUBINO, CORTNEY A**
* **Customer - SERRATELLI SCHIFFMAN BROWN & CALHOON**

* **FEES**

| | |
|---|---|
| STATE WRIT TAX | $0.50 |
| JCS/ACCESS TO JUSTICE | $23.50 |
| RECORDING FEES - RECORDER OF DEEDS | $13.00 |
| AFFORDABLE HOUSING | $10.00 |
| COUNTY ARCHIVES FEE | $2.00 |
| RECORDER'S ARCHIVES FEE - TO COUNTY | $0.50 |
| RECORDER IMPROVEMENT FUND - TO OFFICE | $2.50 |
| TOTAL PAID | $52.00 |

* **Total Pages - 4**

---

**This is a certification page**

**DO NOT DETACH**

**This page is now part of this legal document.**

---

* **RETURN DOCUMENT TO:**
  **CORTNEY RUBINO**
  **14 GRANDVIEW CIRCLE**
  **LIVERPOOL, PA 17045**

**I hereby CERTIFY that this document is recorded in the Recorder of Deeds Office of Perry County, Pennsylvania.**

P.O. Box 223
New Bloomfield, PA 17068

* - Information denoted by an asterisk may change during
    the verification process and may not be reflected on this page.

**Instrument Number: 201008371**

00CF78

**Tax Parcel No.   130,016.00-054.010**

## DEED

*THIS INDENTURE* made this 20th day of October , 2010;

*BETWEEN* **GARY N. SEIBER, JR. and CORTNEY A. SEIBER**, now known through marriage as **CORTNEY A. RUBINO**,

(hereinafter called the Grantors), of the one part and

**CORTNEY A. RUBINO,**

(hereinafter called the Grantee), of the other part,

*WITNESSETH* That in consideration of One ($1.00) Dollar, in hand paid, the receipt whereof is hereby acknowledged, the said Grantors do hereby grant and convey unto the said Grantee, and assigns,

**ALL THAT CERTAIN** tract of land situate in Liverpool Township, Perry County, Pennsylvania, bounded and described as follows:

**BEGINNING AT** a pin in the center of Perry Valley Road (SR 1010) at the northeast corner of Lot #9 on plan recorded in Perry County Plan Book 51 page 95; thence along the centerline of Perry Valley Road, South 69 degrees 22 minutes 41 seconds East, a distance of 342.81 feet to a pin in the center of Perry Valley Road; thence along Lot #11 of the hereinafter mentioned Plan of Lots, South 33 degrees 55 minutes 43 seconds West, a distance of 289.23 feet to a pin at the edge of Grandview Circle of the hereinafter mentioned Plan of Lots; thence along a curve to the left with a chord bearing of North 66 degrees 30 minutes 27 seconds West, an arc length of 191.25 feet, with a chord length of 190.19 feet and a radius of 525.00 feet to a concrete monument; thence along the same North 76 degrees 56 minutes 36 seconds West, a distance of 49.73 feet to a concrete monument; thence along Lot #9 of the hereinafter mentioned Plan of Lots, North 13 degrees 03 minutes 24 seconds East, a distance of 280.93 feet to a pin being the place of BEGINNING, containing 1.8261 acres and being Lot #10 on plan recorded in Perry County Plan Book 51 at Page 95.

**GRANTING ALSO** to the Grantees, their heirs and assigns, a fifty (50) foot easement and right-of-way leading from Wildcat Trail (T-511) over Grandview

Circle to the above described lot.

**SUBJECT TO** the Declaration of Covenants and Restrictions as recorded in the Perry County Recorder of Deeds Office under Instrument No. 200303377.

**SUBJECT ALSO TO** a Sanitary Sewer Easement in favor of the owner of Lot #6 of the hereinbefore mentioned Plan of Lots, their heirs, successors and assigns, for the purpose of constructing, connecting, repairing, maintaining and replacing a sewer system on the above described premises. The dimensions and location of the Sanitary Sewer Easement are more particularly described on plan recorded in Perry County Plan Book 51 at Page 95.

**SUBJECT ALSO TO** conditions and restrictions set forth on Plan recorded in Perry County Plan Book 51 Page 95.

**BEING THE SAME PREMISES** which Jay D. Crum and Anna M. Crum, his wife, granted and conveyed unto Gary N. Seiber, Jr., and Cortney A. Seiber, his wife, now known through marriage as Cortney A. Rubino, Grantors herein, by their deed dated May 20, 2003 and recorded in the Office of the Recorder of Deeds for Perry County on May 21, 2003, at Instrument No. 200305707.

**AND** the said Grantors will specially WARRANT AND FOREVER DEFEND the property hereby conveyed.

**THIS CONVEYANCE** is exempt from the payment of Pennsylvania Realty Transfer Tax in that it is a transfer of real property from Husband and Wife to Wife.

*IN WITNESS WHEREOF*, the said Grantors have caused these presents to be duly executed, the day and year first above written.

WITNESS

WITNESS

WITNESS

Gary N. Seiber, Jr.

Cortney A. Seiber

Cortney A. Rubino

Commonwealth of Pennsylvania: County of Perry

On this, the 20th day of October, 2010, before me, the undersigned officer, personally appeared GARY N. SEIBER, JR., known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument and acknowledged that he executed the same for the purposes therein contained.

NOTARY PUBLIC

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
CAROL V. HEGE, Notary Public
Bloomfield Borough  Perry County
My Commission Expires February 23, 2012

Commonwealth of Pennsylvania: County of Perry

On this, the 20th day of October, 2010, before me, the undersigned officer, personally appeared CORTNEY A. SEIBER, now known through marriage as CORTNEY A. RUBINO, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument and acknowledged that she executed the same for the purposes therein contained.

NOTARY PUBLIC

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
CAROL V. HEGE, Notary Public
Bloomfield Borough  Perry County
My Commission Expires February 23, 2012

I hereby certify that the precise address of the Grantee herein is:

14 Grandview Circle
Liverpool, Pennsylvania 17045

ATTORNEY FOR GRANTEE

RECORDED in Deed Book _____, Page _____,
GIVEN under my hand and the seal of the said
office, the date above written.

RECORDER OF DEEDS

EXHIBIT "1"

# EXHIBIT 2

# EXHIBIT 2

**WENDY M. WELFLEY**
**PERRY COUNTY RECORDER OF DEEDS**
**2 East Main Street**
**New Bloomfield, Pennsylvania 17068**
**(717) 582-2131**

Recorded On 6/16/2014 At 10:16:23 AM
* **Instrument Type - DEED**
    Invoice Number - 124301
* **Grantor - RUBINO, CORTNEY A**
* **Grantee - RUBINO, CHRIS C**
* **Customer - TURNER & OCONNEL**

* **FEES**

| | |
|---|---|
| STATE WRIT TAX | $0.50 |
| JCS/ACCESS TO JUSTICE | $23.50 |
| RECORDING FEES - | $13.00 |
| RECORDER OF DEEDS | |
| AFFORDABLE HOUSING | $10.00 |
| COUNTY ARCHIVES FEE | $2.00 |
| RECORDER'S ARCHIVES FEE | $0.50 |
| - TO COUNTY | |
| RECORDER IMPROVEMENT | $2.50 |
| FUND - TO OFFICE | |
| TOTAL PAID | $52.00 |

* **Total Pages - 4**

---

This is a certification page

**DO NOT DETACH**

This page is now part
of this legal document.

---

* **RETURN DOCUMENT TO:**
TURNER & OCONNEL
4701 NORTH FRONT STREET
HARRISBURG, PA 17110

I hereby CERTIFY that this document is
recorded in the Recorder of Deeds Office
of Perry County, Pennsylvania.

P.O. Box 223
New Bloomfield, PA 17068

* - Information denoted by an asterisk may change during
the verification process and may not be reflected on this page.

**Instrument Number: 201403613**

012678

Prepared By:
TURNER AND O'CONNELL
4701 North Front Street
Harrisburg, PA 17110
(717) 232-4551                          ID No.  139,016.00-054.010

---

## THIS DEED

Made this 9th day of June, 2014, between

CORTNEY A. RUBINO, of Perry County, Pennsylvania, party of the first part,
GRANTOR,

A
N
D

CHRIS C. RUBINO and CORTNEY A. RUBINO, husband and wife, of Perry County,
Pennsylvania, parties of the second part, GRANTEES,

WITNESSETH:  that the Grantor, for and in consideration of the sum of ONE AND
NO/100 ($1.00) DOLLAR in hand paid, the receipt of which is hereby acknowledged, do
grant and convey to the Grantees, their heirs and assigns:

ALL THAT CERTAIN tract of land situate in Liverpool Township, Perry County,
Pennsylvania, bounded and described s follows:

BEGINNING at a point in the center of Perry Valley Road (SR 1010) at the northeast
corner of Lot #9 on plan recorded in Perry County Plan Book 51, page 95; thence along
the centerline of Perry Valley Road, South 69 degrees 22 minutes 41 seconds East a
distance of 342.81 feet to a pin in the center of Perry Valley Road; thence along Lot #11
of the hereinafter mentioned plan of lots, South 33 degrees 55 minutes 43 seconds West a
distance of 289.23 feet to a pin at the edge of Grandview Circle of the hereinafter
mentioned plan of lots; thence along a curve to the left with a chord bearing of North 66
degrees 30 minutes 27 seconds West an arc length of 191.25 feet, with a chord length of
190.19 feet and a radius of 525.00 feet to a concrete monument; thence along the same
North 76 degrees 56 minutes 36 seconds West a distance of 49.73 feet to a concrete
monument; thence along Lot #9 of the hereinafter mentioned plan of lots North 13
degrees 03 minutes 24 seconds East a distance of 280.93 feet to a pin being the place of
BEGINNING.

CONTAINING 1.8261 acres and being Lot #10 on plan recorded in Perry County Plan
Book 51 at page 95.

GRANTING ALSO to the Grantees, their heirs and assigns, a fifty (50) foot easement and right of way leading from Wildcat Trail (T-511) over Grandview Circle to the above described lot.

SUBJECT to Declaration of Covenants and Restrictions as recorded in the Perry County Recorder of Deeds Office under Instrument No. 200303377.

SUBJECT ALSO to a Sanitary Sewer Easement in favor of the owner of Lot #6 of the hereinbefore mentioned plan of lots, their heirs, successors and assigns, for the purpose of constructing, connecting, repairing, maintaining and replacing a sewer system on the above described premises. The dimensions and location of the Sanitary Sewer Easement are more particularly described on plan recorded in Perry County Plan Book 51 at page 95.

SUBJECT ALSO to conditions and restrictions set forth on Plan recorded in Perry County Plan Book 51, page 95.

BEING the same premises which Gary N. Seiber, Jr. and Cortney A. Seibler, now known as Cortney A. Rubino, by deed dated October 20, 2010 and recorded October 26, 2010 in the Perry County Recorder of Deeds Office as Instrument No. 201008371 granted and conveyed unto Cortney A. Rubino.

THE WITHIN TRANSFER is a conveyance from wife to husband and wife and is therefore tax exempt under the Realty Transfer Tax Act, as amended.

AND the said Grantor will SPECIALLY WARRANT AND FOREVER DEFEND the property hereby conveyed.

IN WITNESS WHEREOF, the Grantor has set her hand and seal the day and year first written above.

Witness:

_____    _____(seal)
                                              Cortney A. Rubino

State of Pennsylvania           :
                                       :

County of Dauphin             :

On this the 9th day of June, 2014, before me, the undersigned officer, personally appeared Cortney A. Rubino, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within Deed and acknowledged that she executed same for the purposes therein contained.

In witness whereof, I hereunto set my hand and notarial seal.

My Commission Expires:                        Notary Public

```
COMMONWEALTH OF PENNSYLVANIA
        NOTARIAL SEAL
Stacey A. Fogle, Notary Public
Susquehanna Twp, Dauphin County
My commission expires January 02, 2017
```

I hereby certify that the precise address of the within Grantee is

      14 Grandview Circle, Liverpool, PA  17045

                                 Attorney for Grantee

# EXHIBIT 3

# EXHIBIT 3

**WENDY M. WELFLEY**
**PERRY COUNTY RECORDER OF DEEDS**
**2 East Main Street**
**New Bloomfield, Pennsylvania 17068**
**(717) 582-2131**



**Recorded On 6/16/2014 At 10:16:24 AM**
\* **Instrument Type - MORTGAGE**
   **Invoice Number - 124301**
\* **Mortgagor - RUBINO, CHRIS C**
\* **Mortgagee - LIVERPOOL COMMUNITY BANK**
\* **Customer - TURNER & OCONNEL**

**\* Total Pages - 23**

| \* FEES | |
|---|---|
| STATE WRIT TAX | $0.50 |
| JCS/ACCESS TO JUSTICE | $23.50 |
| RECORDING FEES – | $49.00 |
| RECORDER OF DEEDS | |
| AFFORDABLE HOUSING | $10.00 |
| COUNTY ARCHIVES FEE | $2.00 |
| RECORDER'S ARCHIVES FEE | $0.50 |
| – TO COUNTY | |
| RECORDER IMPROVEMENT | $2.50 |
| FUND – TO OFFICE | |
| TOTAL PAID | $88.00 |

> This is a certification page
>
> # DO NOT DETACH
>
> This page is now part
> of this legal document.

**\* RETURN DOCUMENT TO:**
**TURNER & OCONNEL**
**4701 NORTH FRONT STREET**
**HARRISBURG, PA 17110**

**I hereby CERTIFY that this document is
recorded in the Recorder of Deeds Office
of Perry County, Pennsylvania.**

**P.O. Box 223**
**New Bloomfield, PA 17068**

**Instrument Number: 201403614**

\* - Information denoted by an asterisk may change during
the verification process and may not be reflected on this page.

01267A

Prepared By·
   LIVERPOOL COMMUNITY BANK
   104 NORTH FRONT STREET
   PO BOX A
   LIVERPOOL. PA 17045-0600

Return To:
   L VERPOOL COMMUNITY BANK
   104 NORTH FRONT STREET
   PO BOX A
   LIVERPOOL, PA 17045-0600

Parcel Number:

Premises:
   14 GRANDVIEW CIRCLE, LIVERPOOL, PA  17045 AND 4'0 NORTH
   FRONT STREET. LIVERPOOL, PA  17045

──────────────── [Space Above This Line For Recording Data] ────────────────

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated 06-09-2014
together with all Riders to this document.

**(B) "Borrower"** is
   CHRIS C RUBINO; CORTNEY A. RUBINO; CYNTHIA L. STRAWSER; RODNEY K STRAWSER, IND VIDUALS

Borrower is the mortgagor under this Security Instrument.

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services
                                          Form 3039 1/01
                                  VMP6(PA) (1302) 00
                                  Page 1 of 17

**(C) "Lender"** is  LIVERPOOL COMMUNITY BANK

Lender is a  CORPORATION
organized and existing under the laws of  THE STATE OF PENNSYLVANIA
Lender's address is  104 NORTH FRONT STREET, PO BOX A, LIVERPOOL, PA  17045-0800

Lender is the mortgagee under this Security Instrument.

**(D) "Note"** means the promissory note signed by Borrower and dated  06-09-2014
The Note states that Borrower owes Lender  TWO HUNDRED FORTY ONE THOUSAND FIVE HUNDRED AND NO/*00

                                                                                    Dollars
(U.S. $ 241,500.00              ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than  07-01-2044

**(E) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."

**(F) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.

**(G) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | | | | |
|---|---|---|---|---|---|
| ☐ | Adjustable Rate Rider | ☐ | Condominium Rider | ☐ | Second Home Rider |
| ☐ | Balloon Rider | ☐ | Planned Unit Development Rider | ☐ | 1-4 Family Rider |
| ☐ | VA Rider | ☐ | Biweekly Payment Rider | ☐ | Other(s) [specify] |

**(H) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.

**(I) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.

**(J) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(K) "Escrow Items"** means those items that are described in Section 3.

**(L) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the

PENNSYLVANIA Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3039 1/01
VMP6(PA) (1302).00
Page 2 of 17

Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(M) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(N) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(O) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(P) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in the COUNTY        [Type of Recording Jurisdiction]
of PERRY        [Name of Recording Jurisdiction]:

LIVERPOOL TOWNSHIP, PERRY COUNTY
AND
BOROUGH OF LIVERPOOL, PERRY COUNTY RECORD BOOK 258 / PAGE 204

which currently has the address of  14 GRANDVIEW CIRCLE, LIVERPOOL, PA 17045 AND 410 NORTH FRONT STREET

        [Street]

LIVERPOOL        [City], Pennsylvania 17045        [Zip Code]
("Property Address"):

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3039 1/01
VMP®        VMP6(PA) (*302) 00
Wolters Kluwer Financial Services        Page 3 of 17

EXHIBIT "3"

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property "

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3039 1/01
VMP6(PA) (1302).00
Page 4 of 17

EXHIBIT "3"

shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and

PENNSYLVANIA Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

Form 3039 1/01
VMP6(PA) (1302).00
Page 6 of 17

EXHIBIT "3"                                                                                   Page 6 of 23

reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any

PENNSYLVAN A-Sing e Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

Form 3039 1/01
VMP6(PA) (1302).00
Page 6 of 17

other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If

the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

Form 3039 1/01
VMP6(PA) (1302).00
Page 8 of 17

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument, (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

Form 3039 1/01
VMP6(PA) (1302) 00
Page 9 of 17

Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3039 1.01
VMP6(PA) (1302).00
Page 10 of 17

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this

PENNSYLVANIA Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3039 1/01
VMP6(PA) (1302).00
Page 11 of 17

Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3039 1/01
VMP6(PA) (1302).00
Page 12 of 17

EXHIBIT "3"

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon

PENNSYLVANIA Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

Form 3039 1/01
VMP6(PA) (1302) 00
Page 13 of 17

EXHIBIT "3"

Page 14 of 23

an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolter's Kluwer Financial Services

Form 3039 1/01
VMP6(PA) (1302) 00
Page 14 of 17

EXHIBIT "3"

Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**25. Reinstatement Period.** Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**26. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**27. Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

PENNSYLVANIA Single Family Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3039 1/01
VMP6(PA) (1302).00
Page 15 of 17

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                          CHRIS C RUBINO                -Borrower

_____          _____ (Seal)
                                          CORTNEY A RUBINO              -Borrower

_____ (Seal)          _____ (Seal)
CYNTHIA L STRAWSER     -Borrower          RODNEY K STRAWSER            -Borrower

_____ (Seal)          _____ (Seal)
                       -Borrower                                       -Borrower

**COMMONWEALTH OF PENNSYLVANIA, Dauphin**      **County ss:**

On this, the    **9th**    day of **June 2014**      **, before me, the**
undersigned officer, personally appeared CHRIS C. RUBINO; CORTNEY A. RUBINO; CYNTHIA L. STRAWSER; RODNEY K.
STRAWSER, INDIVIDUALS

                 **known to me (or**
satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged that he/she/they executed the same for the purposes herein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.
My Commission Expires:

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Stacey A. Fogle, Notary Public
Susquehanna Twp. Dauphin County
My comm: ... expires January 02, 2017

Title of Officer

---

**Certificate of Residence**

I, KELLY A. SHERMAN             , do hereby certify that
the correct address of the within-named Mortgagee is   104 NORTH FRONT STREET, PO BOX A, LIVERPOOL, PA 17045-
0800

Witness my hand this 9TH        day of JUNE, 2014

KELLY A. SHERMAN, VICE PRESIDENT / SR. LENDER      Agent of Mortgagee

Loan origination organization LIVERPOOL COMMUNITY BANK
NMLS ID 460942
Loan originator KELLY A. SHERMAN
NMLS ID 749081

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3039 1/01
VMP6(PA) (1302).00
Page 17 of 17

# ADJUSTABLE RATE RIDER

THIS ADJUSTABLE RATE RIDER is made this 9TH ........................ day of JUNE, 2014 ......
........................ and is incorporated into and shall be deemed to amend and supplement
the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date
given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the
"Note") to LIVERPOOL COMMUNITY BANK, 104 NORTH FRONT STREET, PO BOX A, LIVERPOOL, PA 17045-
0600
................................................................................................................................
.......................................................................................... (the "Lender") of
the same date and covering the property described in the Security Instrument and located at:
14 GRANDVIEW CIRCLE, LIVERPOOL, PA 17045 AND 410 NORTH FRONT STREET, LIVERPOOL, PA 17045 ..........

[Property Address]

**NOTICE: THE SECURITY INSTRUMENT SECURES A NOTE WHICH
CONTAINS A PROVISION ALLOWING FOR CHANGES IN THE INTEREST
RATE. INCREASES IN THE INTEREST RATE WILL RESULT IN HIGHER
PAYMENTS. DECREASES IN THE INTEREST RATE WILL RESULT IN
LOWER PAYMENTS.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND PERIODIC PAYMENT CHANGES
The Note provides for an initial interest rate of ........................ 4.250 .%. The Note provides
for changes in the interest rate and the payments, as follows:

## 3. PAYMENTS
### (A) Periodic Payments
I will pay principal and interest by making periodic payments when scheduled: (mark one):
☐ I will make my periodic payments on the first day of each month beginning on
.................................................................................................................................... .
☒ I will make my periodic payments as follows:
360 MONTHLY PAYMENTS OF $1,188.03 BEGINNING 08-01-2014. THIS IS A VARIABLE RATE LOAN
AND THE PAYMENT AMOUNTS MAY CHANGE AFTER THE 12TH PAYMENT AND EVERY 12TH PAYMENT
THEREAFTER. THE ACTUAL AMOUNT OF MY FINAL PAYMENT WILL DEPEND ON MY PAYMENT RECORD.

Multistate Adjustable Rate Rider
Bankers Systems ™ VMP®
Wolters Kluwer Financial Services

VMPC104 (1401).00
ARLR 1/10/2014
Page 1 of 4

☐ In addition to the payments described above, I will pay a "Balloon Payment" of
$.................................... on .................................... . The Note Holder will deliver
or mail to me notice prior to maturity that the Balloon Payment is due. This notice will
state the Balloon Payment amount and the date that it is due.

**(B) Maturity Date and Place of Payments**

I will make these payments as scheduled until I have paid all of the principal and interest
and any other charges described in the Note.

My periodic payments will be applied to interest before Principal. If, on ..07-01-2044..........
.............................................., I still owe amounts under the Note, I will pay those amounts
in full on that date, which is called the "Maturity Date."

I will make my periodic payments at ....104 NORTH FRONT STREET, LIVERPOOL, PA 17045-0600 .....
.................................................. or at a different place if required by the Note Holder.

**(C) Amount of My Initial Periodic Payments**

Each of my initial periodic payments will be in the amount of U.S. $.1,188.03................... .
This amount may change.

**(D) Periodic Payment Changes**

Changes in my periodic payment will reflect changes in the unpaid principal of my loan
and in the interest rate that I must pay. The Note Holder will determine my new interest rate
and the changed amount of my periodic payment in accordance with Section 4 of the Note.

## 4. INTEREST RATE AND PERIODIC PAYMENT CHANGES

**(A) Change Dates**

Each date on which my interest rate could change is called a "Change Date." (Mark one)

☐ The interest rate I will pay may change on the first day of ......................................
and on that day every ................................................. month thereafter.

☒ The interest rate I will pay may change .07-01-2015...................................................
and on every .12TH MONTH....................................................... thereafter.

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The
"Index" is:

THE WEEKLY AVERAGE YIELD ON UNITED STATES TREASURY SECURITIES ADJUSTED TO A CONSTANT
MATURITY OF ONE YEAR .................. ...............................................................................
.................................................................................................................................. .

The most recent Index figure available as of the date ☐ 45 days ☒ .30 DAYS ...............
..................................................................................................................................
before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based
upon comparable information. The Note Holder will give me notice of this choice.

Multistate Adjustable Rate Rider
Bankers Systems ™ VMP®
Wolters Kluwer Financial Services

VMPC10A (1401).00
ARLR 1/10/2014
Page 2 of 4

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by ADDING FOUR & ONE EIGHTH ....................................................................................................
percentage points ( ..................4.125 %) to the Current Index. The result of this calculation:

☐ will not be rounded off.

☒ will be rounded off by the Note Holder to the nearest ..............0.125 %.

☐ will be rounded off by the Note Holder up to the nearest ......................%.

☐ will be rounded off by the Note Holder down to the nearest ......................%.

Subject to the limitations stated in Section 4(D) below, this amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the periodic payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my periodic payment.

**(D) Limits on Interest Rate Changes**

☒ My interest rate will never be increased or decreased on any single Change Date by more than .TWO............................. percentage points from the rate of interest I have been paying for the preceding period.

☒ My interest rate will never be greater than ................................10.250 % or less than ................................4.250 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new periodic payment beginning on the first periodic payment date after the Change Date until the amount of my periodic payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my periodic payment. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this

Multi state Adjustable Rate Rider
Bankers Systems ™ VMP®
Wolters Kluwer Financial Services

VMPC104 (140 ').00
ARLR 1/ *0/2014
Page 3 of 4

EXHIBIT "3"

Page 21 of 23

option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

☐ **C. FUNDS FOR ESCROW ITEMS**
Uniform Covenant 3 of the Security Instrument is waived by the Lender.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

.................................................................... (Seal)
CYNTHIA L. STRAUSER                                    -Borrower

.................................................................... (Seal)
RODNEY K. STRAUSER                                    -Borrower

Cortney A. Rubino

Multistate Adjustable Rate Rider
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

VMPC104 (1401).00
ARLR 1/10/2014
Page 4 of 4

## TRACT NO. 1

ALL THAT CERTAIN tract of land situate in Liverpool Township, Perry County, Pennsylvania, bounded and described s follows:

BEGINNING at a point in the center of Perry Valley Road (SR 1010) at the northeast corner of Lot #9 on plan recorded in Perry County Plan Book 51, page 95; thence along the centerline of Perry Valley Road, South 69 degrees 22 minutes 41 seconds East a distance of 342.81 feet to a pin in the center of Perry Valley Road; thence along Lot #11 of the hereinafter mentioned plan of lots, South 33 degrees 55 minutes 43 seconds West a distance of 289.23 feet to a pin at the edge of Grandview Circle of the hereinafter mentioned plan of lots; thence along a curve to the left with a chord bearing of North 66 degrees 30 minutes 27 seconds West an arc length of 191.25 feet, with a chord length of 190.19 feet and a radius of 525.00 feet to a concrete monument; thence along the same North 76 degrees 56 minutes 36 seconds West a distance of 49.73 feet to a concrete monument; thence along Lot #9 of the hereinafter mentioned plan of lots North 13 degrees 03 minutes 24 seconds East a distance of 280.93 feet to a pin being the place of BEGINNING. CONTAINING 1.8261 acres and being Lot #10 on plan recorded in Perry County Plan Book 51 at page 95.

GRANTING ALSO to the Grantees, their heirs and assigns, a fifty (50) foot easement and right of way leading from Wildcat Trail (T-511) over Grandview Circle to the above described lot.

SUBJECT to Declaration of Covenants and Restrictions as recorded in the Perry County Recorder of Deeds Office under Instrument No. 200303377.

SUBJECT ALSO to a Sanitary Sewer Easement in favor of the owner of Lot #6 of the hereinbefore mentioned plan of lots, their heirs, successors and assigns, for the purpose of constructing, connecting, repairing, maintaining and replacing a sewer system on the above described premises. The dimensions and location of the Sanitary Sewer Easement are more particularly described on plan recorded in Perry County Plan Book 51 at page 95.

SUBJECT ALSO to conditions and restrictions set forth on Plan recorded in Perry County Plan Book 51, page 95.

BEING the same premises which Cortney A. Rubino, by her deed dated June 9, 2013 and recorded in the Perry County Recorder of Deeds Office granted and conveyed unto Chris C. Rubino and Cortney A. Rubino, husband and wife.

## TRACT NO. 2

ALL THAT CERTAIN lot of ground situate in Liverpool Borough, Perry County, Pennsylvania, bounded and described as follows, to wit:

BEING part of Lot No. 7 in the northern Liberties of the Borough of Liverpool, and bounded on the east by Front Street; on the south by the other part of Lot No. 7, now or formerly of G. Maurice Criley; on the west by Mulberry Alley and on the north by a part of lot now or formerly of B.F. Lower, being twenty six (26) feet in front on Front Street, one hundred ninety seven (197) feet deep and twenty one (21) feet in width on Mulberry Alley and having therein erected a two story frame dwelling house and other improvements.

BEING the same premises which The Russell National Bank, Executor of the Will of Harvey W. Wagner, Jr., by deed dated December 17, 1976 and recorded December 27, 1976 in the Perry County Recorder of Deeds Office in Deed Book 258, page 204 granted and conveyed unto Rodney K. Strawser and Cynthia L. Strawser. his wife.

# EXHIBIT 4

# EXHIBIT 4

Inst. # 201601857 - Page 1 of 3

WENDY M. WELFLEY
PERRY COUNTY RECORDER OF DEEDS
2 East Main Street
New Bloomfield, Pennsylvania 17068
(717) 582-2131



Satisfied On 3/22/2016 At 8:24:00 AM
* Instrument Type - SATISFACTION PIECE
  Invoice Number - 137370
* Mortgagor - SEIBER, GARY N JR

* Customer - WELLS FARGO BANK, N.A.

```
* FEES
  STATE WRIT TAX          $0.50
  JCS/ACCESS TO JUSTICE   $35.50
  RECORDING FEES -        $15.00
  RECORDER OF DEEDS
  COUNTY ARCHIVES FEE     $2.00
  RECORDER'S ARCHIVES FEE $0.50
  - TO COUNTY
  RECORDER IMPROVEMENT    $2.50
  FUND - TO OFFICE
  TOTAL PAID              $56.00
```

* Total Pages - 3

This is a certification page

# DO NOT DETACH

This page is now part
of this legal document.

* RETURN DOCUMENT TO:
  WELLS FARGO BANK, N.A.

I hereby CERTIFY that this document is
recorded in the Recorder of Deeds Office
of Perry County, Pennsylvania.

P.O. Box 223
New Bloomfield, PA 17068

* - Information denoted by an asterisk may change during
    the verification process and may not be reflected on this page.

Instrument Number: **201601857**

**RECORDING REQUESTED BY**
WELLS FARGO BANK, N.A.
TIMOTHY ORR
2701 WELLS FARGO WAY
X9901-L1R
MINNEAPOLIS, MN 55467

**AND WHEN RECORDED MAIL TO**
WELLS FARGO BANK, N.A.
LIEN RELEASE DEPT
MAC X9901-L1R
P.O. BOX 1629
MINNEAPOLIS, MN 55440

Tax ID Number: **13001600054010**

Loan Number: **98068017851680001R**

### Satisfaction of Mortgage

Made this: **03/21/2016**

Name of Mortgagor: **GARY N SEIBER JR AND CORTNEY A SEIBER**

Name of Orginal Mortgagee: **WACHOVIA BANK, NATIONAL ASSOCIATION**

Current Mortgagee: **WELLS FARGO BANK, N.A. successor by merger to WACHOVIA BANK, NATIONAL ASSOCIATION** who by signing below certifies that: The address of the last assignee is **1003 E. BRIER DRIVE MAC X0501-022, SAN BERNARDINO, CA 92408**
Date of Mortgage: **12/12/2005**
Original Mortgage Debt: **57695.00**
Mortgage Recorded on **12/30/2005** , in the Office of the Recorder of Deeds of **Perry** County, State of **PA** , in Book: **N/A** , Page: **N/A** , as Document: **200512880**
14 GRAND CIR LIVERPOOL, PA 17045
The undersigned hereby certify/ies that the debt secured by the above-mentioned Mortgage has been fully paid or otherwise discharged and that upon the recording hereof said Mortgage shall be and is hereby fully and forever satisfied and discharged.
Witness the due execution hereof:

On **03/21/2016**
WELLS FARGO BANK, N.A. successor by merger to
WACHOVIA BANK, NATIONAL ASSOCIATION
By:

TIMOTHY ORR, Vice President Loan Documentation

Inst. # 201601857 Page 3 of 3

STATE OF CA
COUNTY OF San Bernardino } s.s.

On this date of **03/21/2016** , before me, **ELIZABETH LUNA** , a Notary Public, personally appeared **TIMOTHY ORR** who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing is true and correct.

Witness my hand and official seal.

Notary Public: **ELIZABETH LUNA**
My Commission Expires: **11/01/2019**
2129157

ELIZABETH LUNA
COMM. #2129157
NOTARY PUBLIC - CALIFORNIA
SAN BERNARDINO COUNTY
My Comm. Expires Nov. 1, 2019

# EXHIBIT 5

# EXHIBIT 5

**WENDY M. WELFLEY**
**PERRY COUNTY RECORDER OF DEEDS**
2 East Main Street
New Bloomfield, Pennsylvania 17068
.    (717) 582-2131



Recorded On 11/24/2021 At 1:09:36 PM
* Instrument Type - DEED
  Invoice Number - 179867                    * Total Pages - 5
* Grantor - RUBINO, CHRIS C
* Grantee - RUBINO, CORTNEY A
* Customer - JERRY PHILPOTT ESQ

* FEES

| | |
|---|---|
| STATE WRIT TAX | $0.50 |
| JCS/ACCESS TO JUSTICE | $40.25 |
| RECORDING FEES – RECORDER OF DEEDS | $13.00 |
| AFFORDABLE HOUSING | $10.00 |
| COUNTY ARCHIVES FEE | $2.00 |
| UPI CERTIFICATION FEE | $20.00 |
| RECORDER'S ARCHIVES FEE – TO COUNTY | $0.50 |
| RECORDER IMPROVEMENT FUND - TO OFFICE | $2.50 |
| TOTAL PAID | $88.75 |

> Perry County UPI Verification
> UPI Verified On November 24, 2021 By RG

> This is a certification page
>
> **DO NOT DETACH**
>
> This page is now part
> of this legal document.

* RETURN DOCUMENT TO:
  JERRY PHILPOTT ESQ

I hereby CERTIFY that this document is
recorded in the Recorder of Deeds Office
of Perry County, Pennsylvania.

P.O. Box 223
New Bloomfield, PA 17068

* - Information denoted by an asterisk may change during
    the verification process and may not be reflected on this page.

**Instrument Number: 202110114**

UPI 130,016.00-054.010

# *This Deed*

Made the *10th* day of *November*, in the year of our Lord two thousand and twenty-one  (2021),

     **BETWEEN CHRIS  C. RUBINO,** an adult individual residing in Florida, and **CORTNEY A. RUBINO,** his wife, who resides in Liverpool Township, Perry County, Pennsylvania, (hereinafter called the Grantors) and **CORTNEY A. RUBINO**, of Liverpool Township, Perry County, Pennsylvania, (hereinafter called the Grantee);

     **WITNESSETH,** That in consideration of One Dollar and Zero Cents ($1.00), in hand paid, the receipt whereof is hereby acknowledged, the said Grantors do hereby grant and convey to the said Grantee, her heirs and assigns:

     **ALL THAT CERTAIN** tract of land situate in Liverpool Township, Perry County, Pennsylvania, together with any buildings and improvements thereon erected,

     **BEGINNING** at a point in the center of Perry Valley Road (SR 1010) at the northeast corner of Lot #9 on the plan recorded in Perry County Plan Book 51, Page 95; thence along the centerline of Perry Valley Road, South 69 degrees 22 minutes 41 seconds East, a distance of 342.81 feet to a pin in the center of Perry Valley Road; thence along Lot #11 of the hereinafter mentioned plan of lots, South 33 degrees 55 minutes 43 seconds West, a distance of 289.23 feet to a pin at the edge of Grandview Circle of the hereinafter mentioned plan of lots; thence along a curve to the left with a chord bearing of North 66 degrees 30 minutes 27 seconds West an arc length of 191.25 feet, with a chord length of 190.19 feet and a radius of 525.00 feet to a concrete monument; thence along the same North 76 degrees 56 minutes 36 seconds West, a distance of 49.73 feet to a concrete monument; thence along Lot #9 of the hereinafter mentioned plan of lots North 13 degrees 03 minutes 24 seconds East a distance of 280.93 feet to a pin, being the place of **BEGINNING.**

     **CONTAINING** 1.8261 acres and being Lot #10 on plan recorded in Perry County Plan Book 51 at Page 95.

     **GRANTING** also to the Grantee, her heirs and assigns, a fifty (50) foot easement and right-of-way leading from Wildcat Trail (T-511) over Grandview Circle to the above-described lot.

**SUBJECT** to Declaration of Covenants and Restrictions as recorded in the Perry County Recorder of Deeds Office under Instrument No. 200303377.

**SUBJECT ALSO** to a Sanitary Sewer Easement in favor of the owner of Lot #6 of the hereinbefore mentioned plan of lots, their heirs, successors and assigns, for the purpose of constructing, connecting, repairing, maintaining, and replacing a sewer system on the above-described premises. The dimensions and location of the Sanitary Sewer Easement are more particularly described on plan recorded in Perry County Plan Book 51 at Page 95.

**SUBJECT ALSO** to conditions and restrictions set forth on Plan recorded in Perry County Plan Book 51, Page 95.

**BEING** the same premises that Cortney A. Rubino granted and conveyed to Chris C. Rubino and Cortney A. Rubino, husband and wife, by deed dated June 9, 2014 and recorded in the Office of the Recorder of Deeds in and for Perry County, Pennsylvania on June 16, 2014 at Instrument Number 2014036313.

**THE WITHIN TRANSFER is a conveyance to wife from husband and wife, and is therefore tax exempt from Realty Transfer Tax.**

**TOGETHER** with all and singular the buildings and improvements, ways, streets, alleys, passages, waters, water-courses, rights, liberties, privileges, hereditaments and appurtenances, whatsoever unto the hereby granted premises belonging, or in any wise appertaining, and the reversions and remainders, rents, issues and profits thereof; and all the estate, right, title, interest, property, claim and demand whatsoever of them, the said grantors, as well at law as in equity, of, in and to the same.

**TO HAVE AND TO HOLD** the above described premises with the appurtenances unto the said Grantee, her heirs and assigns, forever.

**AND** the said Grantors hereby covenant and agree that they and each of them will warrant the property hereby conveyed.

**IN WITNESS WHEREOF**, said Grantors have hereunto set their hands and seals, the day and year first above written.

-2-

SIGNED, SEALED AND DELIVERED
   IN THE PRESENCE OF

_____     _____ {Seal}

                                        Chris C. Rubino

_____     _____ {Seal}

                                        Cortney A. Rubino

– 3 –

Commonwealth of Pennsylvania
~~STATE OF FLORIDA~~                                    )
                                                       ) SS.
COUNTY OF Perry                          )

On this, the _10th_ day of _November_ A.D. 2021, before me, a notary in and for the State of ~~Florida~~, came the above named Chris C. Rubino, and acknowledged the foregoing deed to be his act and deed, and desired the same to be recorded as such.
                Pennsylvania

**IN WITNESS WHEREOF** I hereunto set my hand and official seal.

Commonwealth of Pennsylvania - Notary Seal
DAVID EDWARD WILSON - Notary Public
Dauphin County
My Commission Expires Aug 29, 2023
Commission Number 1355823

_____ {Seal}


**COMMONWEALTH OF PENNSYLVANIA**                   )
                                                   ) SS.
**COUNTY OF PERRY**                                )

On this, the _10th_ day of _November_ A.D. 2021, before me, a notary in and for the Commonwealth of Pennsylvania, came the above named Cortney A. Rubino, and acknowledged the foregoing deed to be her act and deed, and desired the same to be recorded as such.

**IN WITNESS WHEREOF** I hereunto set my hand and official seal.

Commonwealth of Pennsylvania - Notary Seal
DAVID EDWARD WILSON - Notary Public
Dauphin County
My Commission Expires Aug 29, 2023
Commission Number 1355823

_____ {Seal


The address of the above named grantee is:

14 Grandview Circle
Liverpool, PA 17045


_____
**Attorney for Grantee**

-4-
EXHIBIT "5"                                           Page 5 of 5

# EXHIBIT 6

# EXHIBIT 6

**WENDY M. WELFLEY**
**PERRY COUNTY RECORDER OF DEEDS**
2 East Main Street
New Bloomfield, Pennsylvania 17068
(717) 582-2131



Recorded On 1/3/2022 At 8:51:32 AM
* Instrument Type - MORTGAGE
  Invoice Number - 180648                          * Total Pages - 23
* Mortgagor - RUBINO, CORTNEY A
* Mortgagee - MORTGAGE ELECTRONIC REGIS SYS INC
* Customer - MADISON SETTLEMENT SERVICES

* **FEES**

| | |
|---|---|
| STATE WRIT TAX | $0.50 |
| JCS/ACCESS TO JUSTICE | $40.25 |
| RECORDING FEES – | $49.00 |
| RECORDER OF DEEDS | |
| AFFORDABLE HOUSING | $10.00 |
| COUNTY ARCHIVES FEE | $2.00 |
| UPI CERTIFICATION FEE | $20.00 |
| RECORDER'S ARCHIVES FEE | $0.50 |
| – TO COUNTY | |
| RECORDER IMPROVEMENT | $2.50 |
| FUND – TO OFFICE | |
| TOTAL PAID | $124.75 |

> Perry County UPI Verification
> UPI Verified On January 3, 2022 By RG

> This is a certification page
> # DO NOT DETACH
> This page is now part
> of this legal document.

* **RETURN DOCUMENT TO:**
MADISON SETTLEMENT SERVICES
57 REITZ BLVD
SUITE 100
LEWISBURG, PA 17837

I hereby CERTIFY that this document is
recorded in the Recorder of Deeds Office
of Perry County, Pennsylvania.

P.O. Box 223
New Bloomfield, PA 17068

\* - Information denoted by an asterisk may change during
the verification process and may not be reflected on this page.

**Instrument Number: 202200025**

EXHIBIT "6"

01CCFB

Page 1 of 23

Parcel Number:
130.016.00-054.010

**Prepared By:**

Rocket Mortgage, LLC
Rachel L Mullins
1050 Woodward Ave
Detroit, MI 48226-1906
(313)373-0000

**Return To:**

Document Management
Rocket Mortgage, LLC
1050 Woodward Ave
Detroit, MI  48226-1906
(313)373-0000

**Premises:**

14 Grandview Cir
Liverpool, PA 17045-9180

---

# Mortgage

3493557016

**MIN:** 100039034935570160

## Definitions

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20, 21 and 27. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** **"Security Instrument"** means this document, which is dated    December 23, 2021, together with all Riders to this document.

---

6566614221
PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

Form 3039 1/01 (rev. 2/16)
VMP6A(PA) (1712).00
Page 1 of 21

q03493557016 0233 311 0121

**(B)**  **"Borrower"** is Cortney A. Rubino, an unmarried woman

Borrower is the mortgagor under this Security Instrument.

**(C)**  **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and MERS has a mailing address of P.O. Box 2026, Flint, MI 48501-2026 and a street address of 1901 E Voorhees Street, Suite C, Danville, IL 61834. The MERS telephone number is (888) 679-MERS.

**(D)**  **"Lender"** is Rocket Mortgage, LLC, FKA Quicken Loans, LLC

Lender is a Limited Liability Company
organized and existing under the laws of          the State of Michigan
Lender's address is 1050 Woodward Ave, Detroit, MI  48226-1906

**(E)**  **"Note"** means the promissory note signed by Borrower and dated   December 23, 2021.
The Note states that Borrower owes Lender Two Hundred Twenty One Thousand and 00/100
              Dollars (U.S. $ 221,000.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
 January 1, 2052 .

**(F)**  **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G)**  **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

---

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

Form 3039 1/01 (rev. 2/16)
VMP6A(PA) (1712).00
Page 2 of 21

q03493557016 0233 311 0221

**(H)** **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] |
| | | Legal Attached |

**(I)** **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J)** **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K)** **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L)** **"Escrow Items"** means those items that are described in Section 3.

**(M)** **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N)** **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)** **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)** **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

Form 3039 1/01 (rev. 2/16)
VMP6A(PA) (1712).00
Page 3 of 21

q03493557016 0233 311 0321

**(Q)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the

|  County  | of | Perry | : |
| *(Type of Recording Jurisdiction)* | | *(Name of Recording Jurisdiction):* | |

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.
SUBJECT TO COVENANTS OF RECORD.

which currently has the address of 14 Grandview Cir

|  |  | *(Street)* |
| Liverpool | *(City)*, Pennsylvania 17045-9180 | *(Zip Code)* |

("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

Form 3039 1/01 (rev. 2/16)
VMP6A(PA) (1712).00
Page 4 of 21

q03493557016 0233 311 0421

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

   Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

   If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

Form 3039 1/01 (rev. 2/16)
VMP6A(PA) (1712).00
Page 5 of 21

q03493557016 0233 311 0521

and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.  **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

Form 3039 1/01 (rev. 2/16)
VMP6A(PA) (1712).00
Page 6 of 21

q03493557016 0233 311 0621

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4.     Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

Form 3039 1/01 (rev. 2/16)
VMP6A(PA) (1712).00
Page 7 of 21

q03493557016 0233 311 0721

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5.**     **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

Form 3039 1/01 (rev. 2/16)
VMP6A(PA) (1712).00
Page 8 of 21

q03493557016 0233 311 0821

economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.    **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.    **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

Form 3039 1/01 (rev. 2/16)
VMP6A(PA) (1712).00
Page 9 of 21

q03493557016 0233 311 0921

payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8.    Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9.    Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

Form 3039 1/01 (rev. 2/16)
VMP6A(PA) (1712).00
Page 10 of 21

q03493557016 0233 311 1021

EXHIBIT "6"                                    Page 11 of 23

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10.  Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

Form 3039 1/01 (rev. 2/16)
VMP6A(PA) (1712).00
Page 11 of 21

q03493557016 0233 311 1121

Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

Form 3039 1/01 (rev. 2/16)
VMP6A(PA) (1712).00
Page 12 of 21

q03493557016 0233 311 1221

Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

Form 3039 1/01 (rev. 2/16)
VMP6A(PA) (1712).00
Page 13 of 21

q03493557016 0233 311 1321

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender.

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

q03493557016 0233 311 1421

Form 3039 1/01 (rev. 2/16)
VMP6A(PA) (1712).00
Page 14 of 21

Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

Form 3039 1/01 (rev. 2/16)
VMP6A(PA) (1712).00
Page 15 of 21

q03493557016 0233 311 1521

pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

Form 3039 1/01 (rev. 2/16)
VMP6A(PA) (1712).00
Page 16 of 21

q03493557016 0233 311 1621

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary,

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

Form 3039 1/01 (rev. 2/16)
VMP6A(PA) (1712).00
Page 17 of 21

q03493557016 0233 311 1721

Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.**

23. **Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waivers.** Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

25. **Reinstatement Period.** Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

26. **Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

27. **Effect of Survival Events.** Both before and after any Survival Event, as defined below, Borrower shall:

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

Form 3039 1/01 (rev. 2/16)
VMP6A(PA) (1712).00
Page 18 of 21

q03493557016 0233 311 1821

EXHIBIT "6"                                                           Page 19 of 23

(a)   pay Funds for Escrow Items or pay Escrow Items directly as provided in Section 3 of this Security Instrument;

(b)   pay the amounts and take the actions required by Section 4 of this Security Instrument;

(c)   maintain insurance coverages and take the other actions required by Section 5 of this Security Instrument;

(d)   maintain, repair and restore the Property and take the other actions required by Section 7 of this Security Instrument;

(e)   if this Security Instrument is on a leasehold, comply with all the provisions of the lease;

(f)   treat any amounts disbursed by Lender under Section 9 of this Security Instrument as additional debt of Borrower secured by this Security Instrument;

(g)   maintain and pay the premiums for Mortgage Insurance, or make payments to Lender if Mortgage Insurance coverage is not available, and take the other actions required by Section 10 of this Security Instrument;

(h)   permit the collection and application of miscellaneous proceeds as required by Section 11 of this Security Instrument;

(i)   pay the fees required by Section 14 of this Security Instrument;

(j)   continue to abide by the restrictions and take the actions required by Section 21 of this Security Instrument;

(k)   pay any collection expenses under Section 22 of this Security Instrument; and

(l)   pay interest at the rate payable from time to time under the Note.

"Survival Event" means any of the following:

(a)   any default described in the Note;

(b)   Lender requiring Borrower to pay immediately the full amount of Principal which has not been paid and all the interest that Borrower owes on that amount under the Note;

(c)   Lender requiring immediate payment in full of all sums secured by this Security Instrument as described in the Note and Sections 18 and 22 of this Security Instrument;

(d)   the Maturity Date as defined in the Note;

(e)   the entry of any judgment against Borrower under the Note; and

(f)   the entry of any judgment under this Security Instrument.

---

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

Form 3039 1/01 (rev. 2/16)
VMP6A(PA) (1712).00
Page 19 of 21

q03493557016 0233 311 1921

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

**Borrower**

_____ 12/23/2021 _____ *(Seal)*
Cortney A. Rubino                                **-Borrower**

_____ *(Seal)*
                                **-Borrower**

_____ *(Seal)*
                                **-Borrower**

_____ *(Seal)*
                                **-Borrower**

☐  Refer to the attached *Signature Addendum* for additional parties and signatures.

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

Form 3039 1/01 (rev. 2/16)
VMP6A(PA) (1712).00
Page 20 of 21

q03493557016 0233 311 2021

**Acknowledgment**
**State of** Pennsylvania
**County of** ~~Snyder~~ Perry
This record was acknowledged before me on December 23, 2021          by
Cortney A. Rubino

Commonwealth of Pennsylvania - Notary Seal
Theresa L. Oberlin, Notary Public
Snyder County
My commission expires October 16, 2025
Commission number 1279369
Member, Pennsylvania Association of Notaries

_Notary Public_
_My commission expires:_ 10|16|25

**Certificate of Residence**
I,                                                                          , do hereby certify that the
correct address of the within-named Mortgagee is 1901 E Voorhees Street, Suite C, Danville, IL 61834.
Witness my hand this 23rd day of December , 2021

_Agent of Mortgagee_

**Loan Origination Organization:** Rocket Mortgage, LLC
**NMLS ID:** 3030
**Loan Originator:** Kelly Sherman
**NMLS ID:** 749061

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

Form 3039 1/01 (rev. 2/16)
VMP6A(PA) (1712).00
Page 21 of 21

q03493557016 0233 311 2121

Exhibit "A"

ALL THAT CERTAIN tract of land situate in Liverpool Township, Perry County, Pennsylvania, together with any buildings and improvements thereon erected,

BEGINNING at a point in the center of Perry Valley Road (SR 1010) at the northeast corner of Lot #9 on the plan recorded in Perry County Plan Book 51, Page 95; thence along the centerline of Perry Valley Road, South 69 degrees 22 minutes 41 seconds East, a distance of 342.81 feet to a pin in the center of Perry Valley Road; thence along Lot #11 of the hereinafter mentioned plan of lots, South 33 degrees 55 minutes 43 seconds West, a distance of 289.23 feet to a pin at the edge of Grandview Circle of the hereinafter mentioned plan of lots; thence along a curve to the left with a chord bearing of North 66 degrees 30 minutes 27 seconds West an arc length of 191.25 feet, with a chord length of 190.19 feet and a radius of 525.00 feet to a concrete monument; thence along the same North 76 degrees 56 minutes l36 seconds West, a distance of 49. 73 feet to a concrete monument; thence along Lot #9 of the hereinafter mentioned plan of lots North 13 degrees 03 minutes 24 seconds East a distance of 280.93 feet to a pin, being the place of BEGINNING.

CONTAINING 1.8261 acres and being Lot #10 on plan recorded in Perry County Plan Book 51 at Page 95.

GRANTING also to the Grantee, her heirs and assigns, a fifty (50) foot easement and right-of-way leading from Wildcat Trail (T-511) over Grandview Circle to the above-described lot.

SUBJECT to Declaration of Covenants and Restrictions as recorded in the Perry County Recorder of Deeds Office under Instrument Number 200303377.

SUBJECT ALSO to a Sanitary Sewer Easement in favor of the owner of Lot #6 of the hereinbefore mentioned plan of lots, their heirs, successors and assigns, for the purpose of constructing, connecting, repairing, maintaining, and replacing a sewer system on the above described premises. The dimensions and location of the Sanitary Sewer Easement are more particularly described on plan recorded in Perry County Plan Book 51 at Page 95.

SUBJECT ALSO to conditions-and restrictions set forth on Plan recorded in Perry County Plan Book 51, Page 95.

BEING the same premises which Chris C. Rubino, an adult individual and Cortney A. Rubino, his wife, by Deed dated November 10, 2021 and recorded November 24, 2021 in the office of the Recorder of Deeds in and for Perry County, Pennsylvania, to Instrument Number 2021101 14, granted and conveyed unto Cortney A. Rubino, Mortgagor herein.

Commonly Known As: 14 Grandview Circle, Liverpool, PA 17045
Parcel: 130,016.00-054.010

# EXHIBIT 7

# EXHIBIT 7

WENDY M. WELFLEY
PERRY COUNTY RECORDER OF DEEDS
2 East Main Street
New Bloomfield, Pennsylvania 17068
(717) 582-2131



Satisfied On 1/19/2022 At 9:30:37 AM
* Instrument Type - SATISFACTION PIECE
  Invoice Number - 181022
* Mortgagor - RUBINO, CORTNEY A

* Total Pages - 2

* Customer - SIMPLIFILE LC E-RECORDING

* **FEES**

| | |
|---|---|
| STATE WRIT TAX | $0.50 |
| JCS/ACCESS TO JUSTICE | $40.25 |
| RECORDING FEES – RECORDER OF DEEDS | $15.00 |
| COUNTY ARCHIVES FEE | $2.00 |
| UPI CERTIFICATION FEE | $40.00 |
| RECORDER'S ARCHIVES FEE – TO COUNTY | $0.50 |
| RECORDER IMPROVEMENT FUND – TO OFFICE | $2.50 |
| TOTAL PAID | $100.75 |

> Perry County UPI Verification
> UPI Verified On January 19, 2022 By RG

> This is a certification page
>
> **DO NOT DETACH**
>
> This page is now part
> of this legal document.

* RETURN DOCUMENT TO:
  JUNIATA VALLEY BANK
  1 S MAIN ST
  MIFFLINTOWN, PA 17059-1314

I hereby CERTIFY that this document is
recorded in the Recorder of Deeds Office
of Perry County, Pennsylvania.

P.O. Box 223
New Bloomfield, PA 17068

* - Information denoted by an asterisk may change during
the verification process and may not be reflected on this page.

**Instrument Number:** 202200528

EXHIBIT "7"

01CE60

Page 1 of 2

Inst. # 202200528 - Page 2 of 2

# MORTGAGE  SATISFACTION  PIECE
## The Juniata Valley Bank
### PO Box 66, One South Main St, Mifflintown, Pa. 17059

MADE THIS **18th** DAY OF **January 2022**

NAME OF MORTGAGOR: **Chris C Rubino, Cortney A Rubino, Cynthia L Strawser, Rodney K Strawser**

NAME OF MORTGAGEE: **The Juniata Valley Bank formerly Liverpool Community Bank**

DATE OF MORTGAGE: **June 9, 2014**

ORIGINAL MORTGAGE DEBT: **$241,500.00**

MORTGAGE INFORMATION:

Recorded in the OFFICE OF THE RECORDER OF DEEDS OF **PERRY** COUNTY on **June 16, 2014** Instrument Number **201403614** secured by property described hereafter:

**14 Grandview Circle**
**Liverpool, PA 17045**
**Liverpool Township**
**UPI – Parcel No:130,016.00-054.010**

**410 North Front St**
**Liverpool, PA 17045**
**Liverpool Borough**
**UPI—Parcel No:120,017.02-055.000**

The undersigned hereby certifies that the debt secured by the above mentioned Mortgage has been fully paid and discharged and that upon the recording hereof said Mortgage shall be and is full and forever satisfied and discharged.

IN WITNESS WHEREOF, the undersigned being duly authorized has caused this instrument to be executed and sealed this **18th** day of **January 2022.**

BY _____
Lisa M. Snyder, Senior Vice President
The Juniata Valley Bank

COMMONWEALTH OF PENNSYLVANIA
COUNTY OF JUNIATA

On this **18th** day of **January 2022**, before me, a Notary Public, personally appeared Lisa M. Snyder, who acknowledged herself to be an officer of The Juniata Valley Bank, a corporation, and that as such, being authorized to do so, executed the foregoing instrument for the purpose therein contained by signing the name of the corporation by herself as officer.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public

Commonwealth of Pennsylvania - Notary Seal
Shelly M. Gerberich, Notary Public
Juniata County
My commission expires September 13, 2025
Commission number 1278706
Member, Pennsylvania Association of Notaries

1

Robert P. Goe – State Bar No. 137019
Brandon J. Iskander – State Bar No. 300916

2

**GOE FORSYTHE & HODGES LLP**
17701 Cowan Avenue, Suite 210

3

Building D
Irvine, CA 92614

4

rgoe@goeforlaw.com
biskander@goeforlaw.com

5

Telephone: (949) 798-2460
Facsimile: (949) 955-9437

6

7

Attorneys for Plaintiff Charles W. Daff, Chapter 7 Trustee

8

9

<div align="center">

**UNITED STATES BANKRUPTCY COURT**

10

**CENTRAL DISTRICT OF CALIFORNIA, RIVERSIDE DIVISION**

</div>

11

In re:

Case No. 6:22-bk-12775-RB

12

ARTIANA AILEEN CARRARA-RUBINO and
CHRIS CARRARA RUBINO,

Chapter 7

13

Adv. No.: 6:23-ap-01036-RB

Debtors.

14

**NOTICE OF EARLY MEETING OF
COUNSEL PURSUANT TO LOCAL
BANKRUPTCY RULE 7026-1**

15

CHARLES W. DAFF, solely in his capacity as
Chapter 7 Trustee for the bankruptcy estate of
ARTIANA AILEEN CARRARA-RUBINO and
CHRIS CARRARA RUBINO,

16

17

Plaintiff

**Status Conference:**

18

Versus

Date: July 11, 2023
Time: 2:00 p.m.
Place: Courtroom 303
    3420 Twelfth Street
    Riverside, CA 92501

19

CORNEY A. RUBINO, an individual,

20

21

Defendant.

22

**TO THE DEFENDANT:**

23

**PLEASE TAKE NOTICE** that pursuant to the provisions of Local Bankruptcy Rule

24

7026-1, an early meeting of counsel, amongst others exchanges, is required in the above-entitled matter.

25

Local Bankruptcy Rule 7026-1(a) states "Compliance with FRBP 7026 and this rule is required in all

26

adversary proceedings."

27

Federal Rule of Bankruptcy Procedure 7026 states that "Rule 26 F.R.Civ.P. applies in

28

adversary proceedings. The relevant portion of the Federal Rule of Civil Procedure 26 provides as follows:

(f) Conferences of the Parties; Planning for Discovery

    (1)    *Conference Timing.* Except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B) or when the court orders otherwise, the parties must confer as soon as practicable – and in any event at least 21 days before a scheduling conference is to be held or a scheduling order is due under Rule 16(b).

    (2)    *Conference Content; Parties' Responsibilities.* In conferring, the parties must consider the nature and the basis of their claims and defenses and the possibilities for promptly settling or resolving the case; make or arrange for the disclosures required by Rule 26(a)(1); discuss any issues about preserving discoverable information; and develop a proposed discovery plan. The attorneys of record and all unrepresented parties that have appeared in the case are jointly responsible for arranging the conference, for attempting in good faith to agree on the proposed discovery plan, and for submitting to the court within 14 days after the conference a written report outlining the plan. The court may order the parties or attorneys to attend the conference in person.

    (3)    *Discovery Plan.* A discovery plan must state the parties' views and proposals on:

    (A) what changes should be made in the timing, form or requirement for disclosures under Rule 26(a), including a statement of when initial disclosures were made or will be made;

    (B) the subjects on which discovery may be needed, when discovery should be completed, and whether discovery should be conducted in phases or be limited to or focused on particular issues;

    (C) any issues about disclosure or discovery of electronically stored information, including the form or forms in which it should be produced;

    (D) any issues about claims of privilege or of protection as trial- preparation materials, including – if the parties agree on a procedure to assert these claims after production – whether to ask the court to include their agreement in an order;

    (E) what changes should be made in the limitations on discovery imposed under these rules or by local rule, and what other limitations should be imposed; and

    (F) any other order that the court should issue under Rule 26(c) or under rule 16(b) and (c).

With respect to the initial disclosures, Federal Rule of Civil Procedure 26(a) provides in relevant parts as follows.

(a) REQUIRED DISCLOSURES.

    (1)    Initial Disclosure.

(A) In General. Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties:

(i) the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

(ii) a copy—or a description by category and location -- of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses,
unless the use would be solely for impeachment;

(iii) a computation of each category of damages claimed by the disclosing party — who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered; and

(iv) for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

Local Bankruptcy Rule 7026-1(a)(1) further provides: "Notice.  The plaintiff must serve with the summons and complaint a notice that complies with FRBP 7026 and this rule is required."

This Notice is being served in accordance with said rule.

**GOE FORSYTHE & HODGES LLP**

Dated: April 25, 2023

/s/ Brandon J. Iskander
By:  Robert P. Goe
  Brandon Iskander
  Attorneys for Plaintiff Charles W. Daff,
  solely in his capacity as Chapter 7 Trustee
  for the Bankruptcy Estate of Artiana Aileen
  Carrara-Rubino and Chris Carrara Rubino

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

17701 Cowan, Bldg. D, Suite 210, Irvine, CA 92614

A true and correct copy of the foregoing document entitled: **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004–1]** and (2) the accompanying pleading(s) entitled:

COMPLAINT; NOTICE TO DEFENDANTS; EARLY MEETING OF COUNSEL AND STATUS CONFERENCE INSTRUCTIONS;
NOTICE OF EARLY MEETING OF COUNSEL

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005–2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) __04/25/2023_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Charles W. Daff (TR)  charles wdaff@gmail.com, c122@ecfcbis.com
Brandon J Iskander  biskander@goeforlaw.com, kmurphy@goeforlaw.com
United States Trustee (RS)  ustpregion16.rs.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On (*date*) __04/25/2023_____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Defendant:  Cortney A. Rubino, 14 Grandview Circle, Liverpool, PA 17045

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) __04/25/2023_____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

NO DELIVERY REQUIRED

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 04/25/2023 | Susan C. Stein | /s/Susan C. Stein |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2016*

**F 7004–1.SUMMONS.ADV.PROC**